**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bahig Saliba,<br><br>                    Plaintiff<br><br>v.<br><br>American Airlines Inc. and Allied Pilots Association<br><br>                    Defendants. | No. CV-23-01858-PHX-DWL<br><br>**ORDER** |

The two defendants in this action, American Airlines Inc. ("AA") and American Pilots Association ("APA"), have moved to dismiss the complaint of Bahig Saliba ("Plaintiff"). (Docs. 14, 20.) For the following reasons, both motions are granted and the complaint is dismissed without leave to amend.

**BACKGROUND**

The following factual allegations, presumed true, are derived from the complaint.[1]
Plaintiff is a pilot employed by American Airlines, Inc. ("AA"). (Doc. 1 at 2.)[2] In an effort

---

[1] The task of summarizing the relevant factual allegations is complicated by the fact that the complaint is not a model of clarity—contrary to Rule 8(a)(2)'s directive that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiff's complaint is a rambling and at times incoherent mixture of argument, facts, and legal citations. At any rate, the summary below is consistent with Defendants' understanding of the factual allegations in the complaint as articulated in their motions. Although Plaintiff strongly contests Defendants' legal analysis, Plaintiff does not appear to dispute their understanding of the facts.

[2] Although not alleged in the complaint, AA asserts that it removed Plaintiff from flight status in December 2021 due to his refusal to comply with the then-applicable masking mandate at the Spokane International Airport. (Doc. 14 at 4.) Although Plaintiff's description of these events in his response brief is somewhat confusing, he does not appear

to raise various work-related grievances—many similar to those raised in this case—Plaintiff has filed a litany of *pro se* lawsuits. *Saliba v. Am. Airlines, Inc.*, 2:23-cv-00140-SPL (D. Ariz. 2023); *Saliba v. Allied Pilots Ass'n*, 2:22-cv-01025-DLR (D. Ariz. 2022); *Saliba v. Am. Airlines, Inc.*, 2:22-cv-00738-SPL (D. Ariz. 2022); *Saliba v. Pekoske*, 2:22-cv-00587-MTL (D. Ariz. 2022); *Saliba v. Spokane Int'l Airport*, 2:22-cv-00543-JJT (D. Ariz. 2022); *Saliba v. Am. W. Airline*, 2:04-cv-00335-JAT (D. Ariz. 2004). Most, if not all, have already been dismissed. *See* Doc. 30, 2:04-cv-00335-JAT; Doc. 21, 2:22-cv-00543-JJT; Doc. 15, 2:22-cv-00587-MTL; Doc. 51, 2:22-cv-00738-SPL, *aff'd* 2024 WL 1877060 (9th Cir. 2024); Doc. 17, 2:22-cv-01025-DLR, *aff'd* 2024 WL 1877038 (9th Cir. 2024); Doc. 22, 2:23-cv-00140-SPL, *aff'd* 2024 WL 1877053 (9th Cir. 2024).

In this action, Plaintiff sues his employer, AA, and the union that represents AA pilots, APA. (Doc. 1.) Plaintiff objects to § 24.S of the Collective Bargaining Agreement ("CBA") that APA and AA negotiated and that AA pilots ratified overwhelmingly in August 2023. (*Id.* at 2, 24.) Section 24.S provides:

> S. Medical Protections and Qualifications
>
> 1. The Company may not require a pilot, at any time, to undergo any medical procedure(s), other than those required by the FAA to maintain a First Class Medical Certificate, unless required elsewhere in this Agreement. This provision does not apply to pilot new-hire requirements.
>
> 2. A governmental travel requirement which requires vaccination(s)/inoculation(s) for entry is considered a qualification for any flying to that destination. Once the Company has identified a destination(s) with a governmental travel requirement for entry, pilots in the bid status(es) with flying to such destination(s) will self-report their respective vaccination/inoculation to the Company for scheduling purposes. If a pilot does not meet a governmental travel requirement to operate to an international or domestic destination due to their vaccination/inoculation status or for other medical reasons, the pilot will be bid restricted or removed from Sequences to such destination(s) without pay or credit protection. Any Sequence containing flying to a destination with a governmental travel

---

to dispute the fact of his removal from flight status. (Doc. 18 at 5.)

> requirement due to vaccination/inoculation status will be built with the requirement as a qualification if known at the time the Sequence is built.

(*Id.* at 11.)

Although the complaint is not organized into causes of action, it seeks an "Emergency Declaratory Judgment and Permanent Injunction Order enjoining the parties, and all the AA pilots who voted in favor of a new . . . CBA . . . , ratified on August 21, 2023, to suspend the implementation of such agreement pending the striking of unlawful terms that violate the rights and obligations of the Plaintiff under the Federal Aviation Act of 1958, [Plaintiff's] constitutional right to contract, right to a trial by jury, and Public Policy." (*Id.* at 2.) The complaint further alleges that the requested order's "intent is to compel AA and APA to remove or strike language in Section 24 Paragraph S . . . of the newly ratified CBA." (*Id.*, footnote omitted.)

On October 3, 2023, AA moved to dismiss. (Doc. 14.)

On October 27, 2023, APA filed its own motion to dismiss, "join[ing] in many of the arguments made by" AA and "mak[ing] additional arguments as well." (Doc. 20 at 2 & n.1.)

Both motions are now fully briefed. (Docs. 18, 21, 24, 25.) Nobody requested oral argument.

**DISCUSSION**

Although the complaint is not clearly organized, Defendants construe it as asserting separate claims that § 24.S violates (1) the Federal Aviation Act of 1958 ("FAA") and related regulations; (2) various provisions of the Constitution, including the Contracts Clause, the Supremacy Clause, and the Seventh Amendment; and (3) the Americans with Disabilities Act ("ADA"). (Doc. 14 at 8-15; Doc. 20 at 4-9.) Although strongly disagreeing with Defendants' arguments, Plaintiff does not appear to dispute this understanding of his complaint (Docs. 18, 24), and the Court thus accepts it.

…

I.     Legal Standards

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-680. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.    Standing

    A.     **The Parties' Arguments**

AA argues that "Plaintiff lacks standing to assert his claims that the CBA is unlawful under the Federal Aviation Act" because "[c]ollective bargaining agreements concern

collective rights of employees and not uniquely individual rights." (Doc. 14 at 9.) AA further argues that Plaintiff cannot establish the elements of standing because his claims are "purely speculative" and "relate to generalized alleged harms." (*Id.* at 9-10.)

APA argues that Plaintiff's concern "that he may be subjected to some future vaccine or masking requirement . . . is wholly theoretical and does not present a ripe controversy." (Doc. 20 at 4-5, emphasis omitted.) APA also notes that "[a]lternatively, this defect in Plaintiff's complaint can be characterized as a lack of standing." (*Id.* at 5.)

In response to AA, Plaintiff contends that the Declaratory Judgment Act "permits a party to seek a court judgment that defines the parties' rights before an injury occurs." (Doc. 18 at 1.) Plaintiff further contends that "by inserting language in the CBA that invades public policy, harm has already been perpetrated by Defendants when unlawfully locking the Plaintiff in the [Railway Labor Act] grievance process." (*Id.* at 1 n.1.)

Plaintiff responds to APA as follows: "While this dispute does not raise a specific claim other than the legality of 24S (1)(2) and its effects, and seeks a declaratory judgement and injunctive relief, the Plaintiff, in other lawsuits filed against AA and APA, has claims rooted in disputes directly related to public policy and can realistically expect more of the same in the future. There is nothing theoretical about what 24S (1)(2) does and will do in the future and it is by definition an extension of an ongoing dispute." (Doc. 24 at 8.)

In reply, AA reiterates that "an individual employee does not have individual standing to pursue collective claims related to a collective bargaining agreement" and that Plaintiff's professed injury is "hypothetical." (Doc. 21 at 3-4.)

In reply, APA reiterates that Plaintiff's "theory does not present a ripe controversy for the Court to consider (or alternatively, it does not satisfy Article III standing requirements)." (Doc. 25 at 2.)

B. **Analysis**

A lack of standing implicates the Court's subject-matter jurisdiction, so the analysis begins there. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first

determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."). Plaintiff "bears the burden of establishing subject matter jurisdiction." *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (cleaned up).[3]

Here, there may be more than one reason why Plaintiff lacks standing, but the Court will focus on one. Plaintiff's asserted "actual or imminent" injury appears to be that if he is in a "bid status" where he could be scheduled to fly to a jurisdiction that has a COVID-19 vaccine mandate, he may (under § 24.S) be asked to self-report whether he has been vaccinated and may not be allowed to fly if fails to make the required certification. Plaintiff believes this would be unfair and detrimental to him and the public. (Doc. 1 at 8-16.) However, Plaintiff has not alleged an "actual" injury because he has not alleged that the hypothetical scenario he describes has occurred. Nor has Plaintiff alleged an "imminent" injury. Regardless of § 24.S, it is speculative that Plaintiff would be scheduled to fly

---

[3] To the extent Plaintiff contends the Declaratory Judgment Act removes his duty to establish all of the elements of standing (Doc. 18 at 1), he is incorrect. *Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. It only permits the district court to adopt a specific remedy when jurisdiction exists.") (citation omitted).

*anywhere* anytime soon, given that AA contends—and Plaintiff appears to concede—that Plaintiff has been on administrative leave for unrelated reasons since 2021, which is long before § 24.S even came into existence. (Doc. 14 at 4; Doc. 18 at 5.)[4] It was Plaintiff's burden to establish standing and he has failed to meet that burden on this record. *Cf. Vasilenko v. City of Portland*, 2023 WL 3467232, *7 (D. Or. 2023), *report and recommendation adopted*, 2023 WL 3455639 (D. Or. 2023) ("Plaintiff alleges the City's vaccine mandate is void as improperly enacted. . . . Plaintiff is not seeking reinstatement and thus is no longer subject to the vaccine mandate. . . . Because plaintiff does not allege she is still subject to the mandate or will be subject to it, she lacks standing to bring a claim for declaratory relief and the Court should dismiss this claim.").

Alternatively, even if Plaintiff were presently working, he has done nothing to establish any likelihood that he would be imminently scheduled to fly to a jurisdiction with a vaccine mandate—indeed, he has not pleaded the existence of a single jurisdiction that now has an applicable mandate. *Cf. Doe v. San Diego Unified Sch. Dist.*, 2022 WL 16984502, *4 (S.D. Cal. 2022) ("The facts in this case would require the Court to speculate about whether Plaintiffs will ever be subject to a vaccine requirement for COVID-19 . . . and what the details of such a requirement may be.").[5]

Finally, there is no merit to Plaintiff's seeming contention, in a footnote, that Defendants have already injured him by including § 24.S in the CBA because doing so

---

[4] *See also Saliba v. Am. Airlines Inc.*, 2023 WL 1107693, *1-2 (D. Ariz. 2023) ("[O]n December 6, 2021 . . . Plaintiff arrived at the Spokane International Airport for a flight to Dallas Fort Worth, and police at the airport attempted to enforce the then-existing federal mask mandate against Plaintiff. The police reported the incident to American, which initiated disciplinary proceedings against Plaintiff. . . . Plaintiff reported sick on August 19, 2022, the day on which [the fitness-for-duty examination] was ultimately set. [AA] issued an investigation letter for Plaintiff's failure to appear for the appointment and placed him on unpaid leave. . . . Plaintiff has been removed from flight status since December 6, 2021.") (citations omitted).

[5] Although APA notes that this standing issue could also be characterized as a ripeness issue (Doc. 20 at 4-5), there is no need to engage in such hair-splitting here. *Montana Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) ("Regardless of whether we use the verbal formulations developed for standing or the ones developed for ripeness, our analysis is materially unchanged."). *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) ("[T]he Article III standing and ripeness issues in this case boil down to the same question.") (internal quotation marks omitted).

"lock[s]" him into "the [Railway Labor Act] grievance process" for purposes of objecting to any action taken by AA. (Doc. 18 at 1 n.1.) To the extent this assertion is true, it does not establish an "actual or imminent" injury. Once again, whether Plaintiff would ever have reason to avail himself of the grievance process depends at least on whether he could establish (1) the existence of a jurisdiction with an applicable vaccine where he might be scheduled to fly; and (2) that he would have to self-report his vaccination status as a result.

III.     Merits

Although the dismissal analysis could end there, the Court further concludes, in an abundance of caution, that even if Plaintiff had established the existence of subject-matter jurisdiction, the complaint would be subject to dismissal under Rule 12(b)(6). A non-exhaustive list of reasons why is found below.

    A.     **FAA**

        1.     The Parties' Arguments

AA argues that the "FAA . . . and the FAA regulations . . . do not create a private right of action." (Doc. 14 at 10.) APA echoes this argument. (Doc. 20 at 5.)

Plaintiff responds to AA that "[t]he RLA does not confer authority in either AA or APA to negotiate for other than rates of pay, work rules, and working condition." (Doc. 18 at 17.) Plaintiff goes on to argue that "[a] pilot medical certification is public policy, a regulation and a right and AA may not . . . convert a regulation into a contractual term." (*Id.*)  Plaintiff then argues at length that AA has violated public policy because its challenged conduct undermines aviation and employee safety. (*Id.* at 7-11.) Although the legal hook for these public policy arguments is not always clear, Plaintiff seems to base these arguments on his view of the FAA and related regulations. (*See, e.g.*, Doc. 24 at 1 [arguing that the CBA provision "invades, supersedes, infringes on, and replaces public policy . . . promulgated under the Federal Aviation Act of 1958 . . . respecting medical certification and qualifications of pilots"].)

Plaintiff responds to APA that it "acted well outside its statutory authority to negotiate rates of pay, work rules, and working conditions and entered into a CBA, by

converting a federal regulation into a contractual term, that invades public policy." (*Id.* at 2.) Plaintiff also argues that "[f]ederal regulations have the same force as law and no company policy can override that." (*Id.* at 3.) Plaintiff goes on to make similar policy arguments against § 24.S as those found in his response to AA. (*Id.* at 3-9.)

In reply, AA reiterates that "Plaintiff has no private right of action under the FAA." (Doc. 21 at 5.) APA's reply contends that "Plaintiff has conceded that he cannot state a claim under the Federal Aviation Act." (Doc. 25 at 3.)

    2. <u>Analysis</u>

Plaintiff seems to contend that § 24.S violates the FAA and/or certain regulations enacted pursuant to it. To start, Plaintiff's explanation for how § 24.S could violate these provisions is less than cogent. But in any case, the FAA and its regulations do not provide Plaintiff with a private right of action. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902 (9th Cir. 1992) ("[W]e have previously held that there is no implied private right of action under the Federal Aviation Act. We reach the same conclusion here, particularly where plaintiff's claim is grounded in the regulations rather than the statute itself.") (citation omitted). *See also Shapiro v. Lundahl*, 2017 WL 895608, *2 (N.D. Cal. 2017) ("The FAA creates an extensive administrative enforcement scheme but the Ninth Circuit has concluded, repeatedly and without equivocation, that it does not create a private right of action. . . . Because the Ninth Circuit has held the FAA regulations do not create a private right of action, Shapiro's claims are not cognizable and the Complaint fails to state a claim upon which relief can be granted.") (cleaned up).

  B. **Constitutional Claims**

    1. <u>The Parties' Arguments</u>

AA argues that "Plaintiff's Contracts and Supremacy Clause claims fail because there is no state action." (Doc. 14 at 13.) AA further contends that "Plaintiff is not alleging a pre-existing contract affected by a subsequent state-law change, as he must to assert a viable Contracts Clause claim." (*Id.*) Finally, AA contends that "Plaintiff does not have a constitutional right to a jury trial because he seeks equitable relief." (*Id.* at 14.)

APA similarly argues that "Plaintiff has not stated a claim under the Contracts Clause or the Supremacy Clause of the Constitution because he has not alleged any state action." (Doc. 20 at 6.) APA further contends that "Plaintiff's Seventh Amendment claim must be dismissed because grievance arbitration is an appropriate alternative to jury trial." (*Id.* at 7.)

Plaintiff responds to AA that "24S unlawfully and contractually, and for the 28% of the pilots who did not vote for the CBA, waives the pilots' constitutional right to a trial by jury . . . and the contractual obligations towards the People they carry." (Doc. 18 at 17, footnote omitted.) Plaintiff also contends that the "Supremacy Clause preempts states, counties, or cities disallowing airport operators from enforcing any medical treatments on FAA certificated pilots who hold a valid medical certificate in the operation of US registered civil aircraft." (*Id.* at 16.) In response to APA, Plaintiff asserts that "[k]eeping 24S in the CBA will deprive [him] . . . of a constitutionally protect[ed] right to a jury trial." (Doc. 24 at 8.)

In reply, AA reiterates that "Plaintiff's claims based in the Constitution rely entirely on provisions that inhibit state not private actors." (Doc. 21 at 6, emphasis omitted.) AA further contends that "a jury trial is guaranteed only for legal claims or money damages." (*Id.*)

In reply, APA contends that "Plaintiff concedes that he has not stated a claim under the Contracts Clause or the Supremacy Clause of the Constitution" and that "Plaintiff does not show that he has a right to a jury trial for any of the alleged future, hypothetical harms that are at the heart of his complaint." (Doc. 25 at 4-5.)

2. <u>Analysis</u>

"A threshold requirement of any constitutional claim is the presence of state action." *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998), *overruled on other grounds*, *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003). Plaintiff's claim that § 24.S violates Article I, § 10 of the Constitution, which prohibits any "State" from passing any "Law impairing the Obligation of Contracts," fails

because AA and APA are not states. *Sveen v. Melin*, 584 U.S. 811, 818 (2018) ("The Contracts Clause restricts the power of States to disrupt contractual arrangements.").

Plaintiff's reliance on the Supremacy Clause, which provides that federal law "shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding," similarly fails. The Supremacy Clause comes into play when there is a conflict between federal and state law, but the CBA is not a state law. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) ("The Supremacy Clause . . . instructs courts what to do when state and federal law clash.").

Plaintiff's Seventh Amendment claim fares no better. The Seventh Amendment provides "the right of trial by jury" in federal "Suits at common law." To the extent Plaintiff contends that in ratifying § 24.S of the CBA, AA pilots agreed to give up jury-trial rights, the Seventh Amendment is not implicated because APA and the AA pilots are not government actors. *Duffield*, 144 F.3d at 1200 ("The argument is, in essence, that Form U-4 requires Duffield to forfeit . . . her Seventh Amendment right to a jury trial, and her right to an Article III judicial forum in order to obtain employment as a broker-dealer in the securities industry. . . . [T]his argument [is] . . . unmeritorious . . . [because] the essential prerequisite of state action [i]s lacking."). To the extent Plaintiff's complaint is that the Railway Labor Act itself is unconstitutional because it provides for an arbitral forum to resolve disputes concerning interpretation of the CBA, it is unclear how Plaintiff's requested remedy—striking a provision from the CBA—will remedy that complaint. In any event, several courts have upheld the constitutionality of the Railway Labor Act's dispute resolution framework. *Magnuson v. Burlington N., Inc.*, 413 F. Supp. 870, 872-73 (D. Mont. 1976), *aff'd,* 576 F.2d 1367 (9th Cir. 1978) ("The plaintiff's claim is properly part of an administrative scheme and therefore a jury trial is inappropriate and not required."); *Bhd. of R.R. Trainmen v. Denver & R.G.W.R. Co.*, 370 F.2d 833, 836 (10th Cir. 1966) (rejecting argument that Railway Labor Act's dispute resolution scheme "is violative of the Seventh Amendment"); *Essary v. Chicago & N.W. Transp. Co.*, 618 F.2d 13, 17-18 (7th Cir. 1980) ("Being a reasonable substitute for a jury trial, neither

procedure would be deemed to violate plaintiff's Seventh Amendment rights, especially since the Act supplies ample safeguards.").

### C. ADA

#### 1. The Parties' Arguments

AA argues that "[a]dministrative exhaustion is a prerequisite for an action arising under the ADA" and "Plaintiff has not exhausted his administrative remedies." (Doc. 14 at 11.) AA further argues that although "[t]he ADA . . . prohibits questions about disabilities," "[v]accination status is not a disability." (*Id.* at 12, emphasis omitted.) Finally, AA argues that even if it were, "such inquiry would be lawful" because it "is clearly a job-related inquiry." (*Id.* at 13.) APA joins AA's arguments. (Doc. 20 at 8.)

Plaintiff does not appear to respond to AA's arguments. (Doc. 18.) In response to APA's arguments, Plaintiff asserts: "APA fails to state how a pilot who, under the strict authority of the FAA, subjected to intensive and repetitive FAA medical examinations, who must provide AA with such FAA certification, and who must comply with the FAA medical certificate restrictions while operating U.S. Registered Civil aircraft, anywhere in the world, and who must comply with the more restrictive rule under 14 CFR §121.11, falls under the ADA rules of disclosure under 42 U.S.C. §12112 (c) all the while his workplace is in the United States of America and must fall under its laws." (Doc. 24 at 9.)

In reply, AA argues that "Plaintiff's arguments under the ADA fail both because he does not plead the necessary elements and because he never exhausted his claims administratively." (Doc. 21 at 5.)

In reply, APA argues that "Plaintiff's contention that § 24.S(2) amounts to a medical inquiry under the . . . ADA . . . is unsupported by any authority" and that "the requirement set forth in § 24.S(2) is plainly a business necessity." (Doc. 25 at 5.)

#### 2. Analysis

Plaintiff's ADA claim fails. "An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1053 (9th Cir. 2006). Because Plaintiff does

not plead or otherwise attempt to show that he has exhausted his administrative remedies, his complaint must be dismissed. *See, e.g.*, *Staudenmaier v. Orange Cnty. Dep't of Educ.*, 656 F. App'x 360, 362 (9th Cir. 2016) ("Because the district court dismissed Staudenmaier's ADA claim on the ground that he failed to exhaust, and Staudenmaier does not challenge that determination on appeal, we do not consider Staudenmaier's arguments regarding the merits of his ADA claim.").

### D. **Requested Remedies: Declaratory Judgment And Permanent Injunction**

#### 1. The Parties' Arguments

In addition to arguing that Plaintiff's claims fail for the reasons discussed above, AA also emphasizes that one of Plaintiff's requested remedies (an injunction) is unlawful because courts "cannot enjoin Defendants from implementing Section 24.S of the CBA under the Norris-LaGuardia Act." (Doc. 14 at 15.)

In response, Plaintiff argues that "[a] Declaratory Judgment, sought by the Plaintiff, is appropriate" and "will serve as the foundation supporting [an] order for an injunction striking an unlawful term in the new . . . CBA." (Doc. 18 at 1-2.) Plaintiff further contends that "the Norris LaGuardia Act . . . defense fails" because that statute allows injunctions "in a strict conformity with the provisions of the Act" and protects his right "to exercise actual liberty to obtain acceptable terms and conditions of employment." (*Id.* at 13-14, cleaned up.)

In reply, AA reiterates that "Plaintiff's claims are also barred by the Norris-LaGuardia Act." (Doc. 21 at 6.) AA explains that "Plaintiff argues that the NLA is inapplicable because his requirement to hold a medical certificate . . . must be strictly adhered to," but "Section 24.S . . . does not purport to remove Plaintiff's requirement to have a medical certificate," and in any case "Plaintiff's dispute related to 24.S is, in fact, a labor dispute that the NLA prohibits a federal court from enjoining." (*Id.* at 7.)

#### 2. Analysis

Because Plaintiff loses both due to a lack of standing and due to a lack of meritorious claims, his requests for a declaratory judgment and permanent injunction necessarily fail

- 13 -

as well. *Church of Scientology Int'l v. Kolts*, 846 F. Supp. 873, 882 (C.D. Cal. 1994) ("[W]ithout an underlying claim, Plaintiff has no right to a declaratory judgment."); *Aluminum Trailer Co. v. Sidi Spaces, LLC*, 2020 WL 4039095, *3 n.9 (D. Ariz. 2020) ("A permanent injunction is not a claim, it is a form of relief a party can ask for if it succeeds on some underlying claim."). Thus, the Court need not resolve AA's argument that the requested injunction would violate the Norris-LaGuardia Act.

IV. Leave to Amend

Defendants ask the Court to dismiss the complaint without leave to amend. (Doc. 14 at 16; Doc. 20 at 9.) Although Plaintiff does not request leave to amend in the event of dismissal (Docs. 18, 24), the Ninth Circuit has suggested that, in certain circumstances, "a district court should grant leave to amend even if no request to amend the pleading was made." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citation omitted).

Here, the Court concludes that leave to amend should be denied because the complaint is being dismissed based on legal deficiencies that could not be cured through the pleading of new facts. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility."); *Kadva Patidar 42 Gam Samaj v. Cnty. of Riverside*, 777 F. App'x 215, 217 (9th Cir. 2019) ("[B]ecause the district court correctly held that it lacked subject matter jurisdiction, it did not abuse its discretion by denying Samaj leave to amend the complaint as any amendment would have been futile."). Additionally, given Plaintiff's propensity to file repetitive, meritless, and arguably abusive lawsuits (often against the same defendants), the Court concludes that it is in the interest of justice, as well as necessary to prevent prejudice to Defendants, that this equally meritless lawsuit meet a swift end. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

…

…

…

Accordingly,

**IT IS ORDERED** that Defendants' motions to dismiss (Docs. 14, 20) are **granted**. The complaint is dismissed without leave to amend. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of May, 2024.

Dominic W. Lanza
United States District Judge